## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE ERIC RAMOS,       : | |
|     Plaintiff,       : | |
|                                : | |
|     v.       : | Case No. 3:15-cv-518 (VAB) |
|                                : | |
| COREY POORE, ET AL.,       : | |
|     Defendants.       : | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff, Jose Eric Ramos, is currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut ("MacDougall-Walker"). Mr. Ramos initially filed this action in the Connecticut Superior Court for the Judicial District of New London, asserting claims of excessive force, lack of speedy arraignment, and violations of the right to counsel and the right to remain silent against Defendants, Sergeant Corey Poore, Detectives James Curtis and H. Reams, Supervisor John Doe on Shift 9-16-12, and the Norwich Police Department.

On April 9, 2015, Defendants removed the action from state court to this Court under 28 U.S.C. § 1446. *See* Notice of Removal, ECF No. 1. On April 20, 2016, Defendants moved for summary judgment. The Court denied the motion without prejudice because counsel had neglected to file and serve a Notice to Pro Se Litigant on Mr. Ramos as required by D. Conn. L. Civ. R. 56(b). *See* Order, ECF No. 11. Defendants subsequently moved to renew their motion for summary judgment, *see* Mot. Summ. J., ECF No. 13, and Mr. Ramos filed a memorandum and a Local Rule 56(a)(2) Statement in opposition to the motion for summary judgment, *see* Mem. Opp'n Mot. Summ. J., ECF No. 18 and Local Rule 56(a)(2) Statement, ECF No. 19.  For

the reasons set forth below, the motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

I.	**Standard of Review**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is "entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).  Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.*

In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor."  *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted).  If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party for the issue on which summary judgment is sought, however,

2

summary judgment is improper.  *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted).  Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003).

## II.     Factual Allegations[1]

Corey Poore, James Curtis and H. Reams were Detectives with the Norwich Police Department as of September 25, 2012.  Based on an investigation by the Norwich Police Department and the State of Connecticut Office of the Chief State's Attorney's Southeastern Connecticut Cold Case Unit into the shooting of Tynell Hardwick in October 2008 in Norwich, Connecticut, Detective Poore obtained a warrant for the arrest of Mr. Jose Ramos for the murder of Mr. Hardwick.  Detective Poore subsequently obtained information that Mr. Ramos was living in New York.

On September 25, 2012, New York Police officers and detectives arrested Mr. Ramos at 69-42 Decoste Avenue, Queens, New York pursuant to the warrant for his arrest.  Following Mr. Ramos's custodial arrest arrest, New York Police officers transferred custody of Mr. Ramos to Detective Poore, who transported Mr. Ramos to the 90th Precinct of the New York Police Department, located in Brooklyn, New York.

---

[1] The relevant facts are taken from Defendants' Local Rule 56(a)(1) Statement [ECF No. 13-2] and Exhibits attached to the Local Rule 56(a)(1) Statement [ECF No. 13-3], as well as Mr. Ramos's Local Rule 56(a)(2) Statement [ECF. No. 19] and Exhibits attached to the Local Rule 56(a)(2) Statement [ECF No. 19-1].

At the police precinct, Mr. Ramos signed a Norwich Police Department Advisement of Rights form. Later that day, a New York Assistant District Attorney presented Mr. Ramos to a judge in the Criminal Court of the City of New York, County of Kings in a waiver of extradition proceeding. During that proceeding, Mr. Ramos acknowledged that he was a fugitive from the State of Connecticut who had been charged in the County of New London with the crime of murder, waived his right to the issuance and service of a warrant of extradition, and consented to his return to the State of Connecticut.

That evening, Detectives Poore, Curtis and Reams transported Mr. Ramos from New York to the Norwich Police Department. At approximately 12:02 a.m. on September 26, 2012, Mr. Ramos signed a State of Connecticut Notice of Rights – Bail. Mr. Ramos spent the night in a holding cell at the Norwich Police Department.

At approximately 8:00 a.m. on September 26, 2012, Detective Poore brought Mr. Ramos into an interview room at the Norwich Police Department and Mr. Ramos signed another Advisement of Rights and a Waiver of Rights. Detective Poore interviewed Mr. Ramos for approximately three hours. During this time, Mr. Ramos confessed to the murder of Mr. Hardwick in October 2008, wrote a letter of apology to Mr. Hardwick's mother, wrote and signed a confession statement, and signed a waiver consenting to a DNA swab.

At approximately, 11:00 a.m., Detective Poore transported Mr. Ramos to the Norwich Superior Court. Upon arrival at the courthouse, Detective Poore turned Mr. Ramos over to judicial marshals. A judge arraigned Mr. Ramos on the charge of murder that afternoon. On January 5, 2016, the judge denied Mr. Ramos's motion to suppress his statements and admissions to the murder of Mr. Hardwick.

On April 29, 2016, a jury in the Connecticut Superior Court for the Judicial District of New London found Mr. Ramos guilty of murder.[2]  The judge sentenced Mr. Ramos to sixty years of imprisonment.   The plaintiff seeks monetary damages from Defendants.

## III.   Discussion

Defendants argue that Mr. Ramos has failed to allege facts to state plausible Fourth, Fifth or Fourteenth Amendment claims.   Mr. Ramos disagrees.

As a preliminary matter, Mr. Ramos has named the Norwich Police Department as a Defendant.  A municipal police department is not an independent legal entity and is not subject to suit under Section 1983.  *See Rose v. City of Waterbury*, Civil Action No. 3:12-cv-291 (VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013) (noting that courts within Connecticut have determined that state statutes do not include  "provision[s] establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued . . . it is the municipality itself which possesses the capacity to sue and be sued") (internal quotation marks and citation omitted).  Furthermore, a police department is not a person amenable to suit under 42 U.S.C. § 1983.  *See Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (collecting cases).  Thus, any claims against the Norwich Police Department are dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (court may dismiss "at any time" a claim on which relief may not be granted).

---

[2] *See State v. Ramos*, Case No. KNL-CR-12-0119499-T.   Information regarding Mr. Ramos's criminal conviction and sentence may be found at: http://www.jud.ct.gov/jud2.htm under Criminal/Motor Vehicle Case Look-up and Searching by Case Number using KNL-CR-12-0119499-T and also may be found at: www.ctinmateinfo.state.ct.us, using the plaintiff's inmate number, 293626.

5

### A.     Invocation of Right to Counsel – Fifth Amendment Claim

Mr. Ramos alleges that, during his interrogation by Detectives Poore and Curtis at the Brooklyn police precinct on September 25, 2012, he demanded that the interview stop and invoked his right to counsel.   Mr. Ramos contends that Detective Poore continued to question him after he invoked his right to counsel, both at the New York police precinct and the following day in the Norwich Police Department.

Defendants argue that this claim is not cognizable in a Section 1983 action.  Rather, any relief available to Mr. Ramos would be through a motion to suppress any statements made after he invoked his right to counsel.

The Fifth Amendment to the United States Constitution provides in pertinent part that "[n]o person ... shall be compelled in any criminal case to be a witness against himself. . . ." The Supreme Court has held that the Fifth Amendment requires that an arrestee be advised of his right to have an attorney present prior to custodial interrogation.  *See Miranda v. Arizona*, 384 U.S. 436, 474 (1966) (holding that once the right to counsel is invoked, "the interrogation must cease until an attorney is present").

The Second Circuit and district courts within this Circuit have held that the appropriate remedy for this type of Fifth Amendment constitutional violation is exclusion of the evidence following a suppression hearing, not a cause of action for damages under Section 1983.  *See Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 350 (2d Cir.1998) ("any claim that a statement was unconstitutionally taken in the absence of counsel is properly remedied by suppression following a *Huntley* hearing"); *Neighbour v. Covert,* 68 F.3d 1508, 1510–11 (2d Cir.1995) (per curiam) ("The remedy for a *Miranda* violation is the exclusion from evidence of

any ensuing self-incriminating statements.... Since [the plaintiff] had not been arrested or charged with any crime at the time of questioning, her Sixth Amendment rights had yet to attach."); *McZorn v. Endicott Police Dep't,* No. 3:06 Civ. 0033, 2008 WL 163581, at *9 (N.D.N.Y. Jan. 16, 2008) ("while a police officer may not question a suspect once he invokes his right to counsel, the remedy for a violation of this rule is suppression of the resulting statement in ensuing criminal proceedings, not a cause of action for damages under Section 1983"); *Brown v. Martin,* No. 98 Civ. 0064, 2004 WL 1774328, at *7 n. 8 (W.D.N.Y. Aug. 6, 2004) ("exclusion of the evidence following a *Huntley* hearing, relief which the plaintiff has already received . . . is not appropriately sought pursuant to 42 U.S.C. § 1983"). Mr. Ramos concedes that he filed a motion to suppress in his criminal proceeding and sought to have the statements he made suppressed. *See* Ramos Aff. ¶ 38, Pl.'s Ex H, ECF No. 19-1. The judge, however, denied his motion. *See id.* Mr. Ramos has filed an appeal of his conviction and the appeal remains pending.[3]

Furthermore, Mr. Ramos' claim about statements he made in violation of his Fifth Amendment rights is barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994):

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has **not** been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must

---

[3] Information regarding the appeal of Mr. Ramos's conviction may found at: http://www.jud.ct.gov/jud2.htm under Supreme and Appellate Court Case Look-up and Searching by Case Number, using 19697.

> consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction has already been invalidated.

*Id.* at 486-87 (footnote omitted).  A determination by this Court that Detective Poore improperly continued to interrogate Mr. Ramos after he invoked his right to counsel in violation of Mr. Ramos' Fifth Amendment rights would necessarily imply the invalidity of his conviction.  Because Mr. Ramos fails to demonstrate that his current conviction has been invalidated or called into question, his claim for monetary damages related to that confinement is barred by *Heck*.  Thus, Defendants' motion for summary judgment is granted as to Mr. Ramos' claim that Detective Poore violated his Fifth Amendment rights by continuing to interrogate Mr. Ramos after the invocation of Mr. Ramos' right to counsel.  This claim is dismissed.

### B.   Speedy Arraignment/Fourteenth Amendment Equal Protection Claim

Mr. Ramos states that Detectives Poore, Curtis and Reams transported him from the Brooklyn police precinct to the Norwich Police Department during the evening of September 25, 2012.  After Detective Poore processed and booked Mr. Ramos, officers placed him in a holding cell overnight.  On September 26, 2012, Detective Poore did not immediately transport him to the Connecticut Superior Court for arraignment; instead, he interviewed Mr. Ramos for another three hours or so, and then transported him to court later that morning.

Mr. Ramos contends that Detective Poore denied him his right to a speedy arraignment.  In addition, he claims that Detective Poore violated his equal protection rights because other arrestees were transported to court first thing that morning, while Detective Poore required him to remain at the police department until later that morning.  Mr. Ramos contends that speedy arraignment is the custom of the City of Norwich.  Although Mr. Ramos names Supervisor John

8

Doe on Shift 9-26-12 as a Defendant, he does not otherwise refer to this Defendant in the body of the complaint.

There is no genuine dispute of material fact about the timeliness of Mr. Ramos' arraignment. Under Connecticut Practice Book § 37-1, a "defendant who is not released from custody sooner shall be brought before a judicial authority no later than the first court day following arrest." *See* Conn. Practice Book § 37-1. A prosecutor from the State of New York presented Mr. Ramos to a judge in the Criminal Court of the City of New York, County of Kings in a waiver of extradition proceeding on the September 25, 2012, the date of his arrest. During that proceeding, Mr. Ramos waived his right to the issuance and service of a warrant of extradition and consented to his return to the State of Connecticut. On September 26, 2012, the day after Mr. Ramos' arrest, Detective Poore transported him to the Norwich Superior Court to be arraigned on the charge of murder. Thus, Mr. Ramos was arraigned no later than the day after his arrest. Mr. Ramos has presented no evidence to contradict these facts. Accordingly, Mr. Ramos has not stated a claim that Detective Poore denied him a timely arraignment.

Mr. Ramos also argues that the failure to immediately bring him to court during the morning of September 16, 2012 violated his equal protection rights because other arrestees were brought to court first thing that morning. Defendants argue that Mr. Ramos has not alleged facts to state an equal protection claim.

The Supreme Court has recognized that "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting

*Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "This provision does not mandate identical treatment for each individual." *Muhmmaud v. Murphy*, 632 F. Supp. 2d 171, 178 (D. Conn. 2009) (citing *City of Cleburne*, 473 U.S. at 439–40).

In order to prove a violation of the Equal Protection Clause, a plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) compared with others similarly situated he or she was treated differently; and (2) such different treatment was based on impermissible considerations such as "race, religion, national origin or some other constitutionally protected characteristic." *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted). Mr. Ramos, however, does not allege that Defendants treated him differently because of his membership in a protected class.

Although the Equal Protection Clause is most often raised by a plaintiff asserting discrimination on the basis of membership in a protected class or group, a plaintiff may also proceed as a "class of one" by alleging that "she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). The plaintiff must allege an "extremely high" level of similarity with the person to whom he is comparing himself. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). The plaintiff's circumstances and the other person's must be "prima facie identical." *Id.* at 105 (internal quotation marks and citation omitted).

Mr. Ramos does not allege that Detective Poore treated him differently because his race or any other identifiable suspect class. To the extent that Mr. Ramos is comparing himself to other arrestees who were confined at the Norwich Police Department who were transported to court earlier on September 26, 2012, he has not alleged sufficient facts to show the necessary degree of similarity to those inmates. *See Ruston v. Town Bd. for the Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir. 2010) (affirming dismissal of equal protection claim on ground that mere allegation of less favorable treatment than "similarly situated" persons failed to state plausible "class of one" equal protection claim) (citing *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) ("class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves") (citation omitted)). Consequently, Mr. Ramos has failed to allege facts to state a plausible equal protection "class of one" claim. *Page v. Lantz*, No. 3:03-cv-1271 (MRK), 2007 WL 1834519, at *6 (D. Conn. June 25, 2007) (holding that "class of one" equal protection claim fails as a matter of law where plaintiff did not allege that similarly situated inmates were treated differently under similar circumstances).

Defendants' motion for summary judgment is granted with respect to Mr. Ramos' speedy arraignment/equal protection claim. This claim is dismissed.

### C. Use of Force/Failure to Intervene – Fourth Amendment Claim

Mr. Ramos contends that New York police officers or detectives assaulted him during his arrest on September 25, 2012 at his home in Queens, New York and that the same or different officers or detectives also assaulted him after they transported him to a police department in New York. Mr. Ramos alleged that Detectives Poore, Reams and Curtis were present during both of

11

these assaults, but failed to intervene.

As indicated above, Mr. Ramos describes Norwich Police Department Supervisor Doe as working on the September 26, 2012 shift. Because Mr. Ramos does not assert that Norwich Police Department Supervisor John Doe was working on September 25, 2012, the Court does not construe the Complaint as asserting claims of failure to intervene against Supervisor John Doe.

The Fourth Amendment protects individuals from the use of excessive force by a police officer during an arrest. *See* U.S. Const. Amend. IV (stating that people shall "be secure in their persons ... against unreasonable ... seizures"); *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment"). The test for determining excessive force requires the Court to balance the extent of the force used "against the countervailing government interests at stake." *Id.* at 396. This evaluation must be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and with an awareness that "police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 397. Further, this evaluation must consider all the facts of the case, including the severity of the crime, whether the arrestee posed an imminent threat to the safety of the officer or other individuals, and whether he actively resisted the arrest. *See Id.* at 396.

Even if a particular officer did not directly participate in the use of excessive force, a plaintiff may still prove personal liability under section 1983 by showing that the officer or officers "permitted fellow officers to violate a suspect's clearly established statutory or

constitutional rights." *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 384 (D. Conn. 2009) (quoting *Ricciuti N.Y.C. Transit Authority*, 124 F.3d 123, 129 (2d Cir. 1997)). It is well-established that an officer or detective "is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988) ("[a] law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers").

The Complaint includes an allegation that New York Police officers or detectives assaulted Mr. Ramos during his arrest in Queens, New York on September 25, 2012. *See* Compl., ECF No. at 7, ¶ 8. While the Complaint does not name those officers or detectives as Defendants in this action, Mr. Ramos alleges that Defendants Poore, Reams and Curtis were present during his arrest. *See id.* The Complaint also includes an allegation that New York Police officers or detectives assaulted Mr. Ramos after transporting him to a New York police department and that Detectives Poore, Reams and Curtis that were present during these assaults as well. *See id.*

Defendants contend that the evidence, including an affidavit from Detective Poore, a New York City Police Department report of Mr. Ramos's arrest on September 25, 2012, and the lack of any injury suffered by Mr. Ramos, demonstrates that no force, excessive or otherwise, was used on Mr. Ramos on September 25, 2012. Detective Poore states that "[n]o physical force was used nor did any altercation occur during the arrest of the plaintiff by members of the New York Police Department." *See* Poore Aff. ¶ 10, Defs.' Ex. A, ECF No. 13-3. The New

York City Police report, however, includes a section indicating that physical force was used, but also includes a section indicating that the three arresting officers did not use force. The report is a typewritten report that is not signed. *See* Police Report at 4, Defs.' Ex. C.

Mr. Ramos has filed an affidavit in which he claims that officers or detectives in the New York Police Department "attacked and arrested" him while he was using the bathroom at his home in Queens, New York on September 25, 2012. *See* Ramos Aff. ¶ 1, Pl.'s Ex H, ECF No. 19-1. He does not provide any details regarding the nature of the officers' alleged "attack," and he does not indicate whether any of the named Defendants were present. According to Mr. Ramos, these officers placed him in a police car with Detective Poore, and they rode together to the 90th Precinct of the New York Police Department located in Brooklyn, New York. *Id.* at ¶ 2. During the ride to the police precinct, Detective Poore questioned Mr. Ramos about the murder of Tynell Hardwick, and at the precinct, Detectives Poore and Curtis questioned Mr. Ramos in an interview room. *Id.* at ¶¶ 3, 6. During the questioning, those officers provided Mr. Ramos with details about the murder of Mr. Hardwick, and Mr. Ramos signed a waiver of rights form because he "didn't have anything to hide." *Id.* at ¶¶ 7. Mr. Ramos claims that he became aggressive when Detective Curtis made a threat regarding Mr. Ramos's daughter, and Mr. Ramos then stated that he would no longer speak to Detectives Poore and Curtis unless a lawyer was present. *Id.* at ¶¶ 8-10. Detective Curtis then left the room. *Id.* at ¶ 11.

According to Mr. Ramos, the second alleged assault took place after a New York Detective who had previously exhibited aggressive behavior towards Mr. Ramos entered the room during questioning. *Id.* at ¶¶ 11-12. He claims that this detective eventually hand-cuffed Mr. Ramos behind his back and started to escort him out of the room, while Detective Poore kept

14

attempting to ask Mr. Ramos questions. *Id.* at ¶¶ 12-13. Mr. Ramos claims that this detective began to twist the handcuffs on Mr. Ramos's wrists and pull his arms over his head until Mr. Ramos cried out in pain and swore at the detective. *Id.* at ¶¶ 14-15. The detective then escorted Mr. Ramos out of the room and to a holding cell. *Id.* at ¶ 16. Mr. Ramos states that, as a result of this detective's actions, he suffered pain and physical injury to his shoulder. *Id.* at ¶ 33; Compl. at 7, ¶ 9, ECF No. 1.

There are no factual allegations or evidence to suggest that either Detective Curtis or Detective Reams were present during the incidents in which force was allegedly used against Mr. Ramos by New York Police detectives or officers. Thus, in the absence of material facts in dispute regarding the presence or involvement of Detectives Reams or Curtis in the alleged failure to protect Mr. Ramos from the use of force by members of the New York Police Department, the Court concludes that Defendants Reams and Curtis are entitled to judgment as a matter of law on this Fourth Amendment claim. Thus, Defendants' motion for summary judgment is granted on this ground as to Detectives Reams and Curtis.

With regard to the claim of failure to intervene against Detective Poore, the Court concludes that there are genuine issues of material fact as to whether excessive force was used in the presence of Detective Poore by New York Police officers or detectives to effect the arrest of Mr. Ramos, as well as whether excessive force was used in the presence of Detective Poore during Mr. Ramos's interrogation at the Brooklyn police precinct. Additionally, assuming that Detective Poore was present for any use of force by members of the New York Police Department, a question of fact exists as to whether there was sufficient time for him to have intervened to stop the use of force. *See Figueroa*, 825 F.3d at 106 (finding the question of

15

whether a defendant had sufficient time to intervene in the use of excessive force to be a "matter [that] lies squarely in the jury's province"). These disputed issues of fact preclude a finding that Detective Poore is entitled to judgment as a matter of law on Mr. Ramos' failure to intervene claim.  Thus, the motion for summary judgment is denied as to Detective Poore on this ground.

## Conclusion

Defendants' Motion for Summary Judgment [**ECF No. 13**] is **GRANTED** as to Mr. Ramos' speedy arraignment/Fourteenth Amendment equal protection claim and the Fifth Amendment invocation of counsel claim against all Defendants, and as to the Fourth Amendment failure to intervene in the use of excessive force claim against Detectives Curtis and Reams.  Defendants' motion is **DENIED** as to the Fourth Amendment failure to intervene in the use of excessive force claim against Detective Poore.  The claims against the Norwich Police Department are **DISMISSED** under 28 U.S.C. § 1915(e)(2)(B)(ii).  Accordingly, only the claim against Detective Poore for failure to intervene in the use of excessive force against Mr. Ramos remains pending.

SO ORDERED at Bridgeport, Connecticut this 31st day of March, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE